United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

180SQUARED, INC.,

    Plaintiff,

    v.

ALLO TWIN CITIES LLC,

    Defendant.
_____/

No. C 12-4951 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion for an order dismissing the complaint for lack of personal jurisdiction came on for hearing before this court on January 16, 2013. Plaintiff appeared by its counsel Kyle Kunst, and defendant appeared by its counsel Jason Curliano. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court GRANTS the motion as follows and for the reasons stated at the hearing.

**BACKGROUND**

Plaintiff 180Squared, Inc. is a network system integrator and computer software developer and service provider, with its principal place of business located in Pleasanton, California. On January 24, 2010, plaintiff and defendant Allo Twin Cities LLC ("ATC"), a Nebraska limited liability company, entered into an agreement, pursuant to which plaintiff licensed software to ATC for an internet television system. The parties also agreed that

plaintiff would integrate the software for ATC, and would provide upgrades, training, and additional maintenance.

ATC agreed to pay a total contract price of $719,981, in five installments – $148,496.20 on January 24, 2010; and $142,871.20 on February 25, 2011, on January 24, 2012, on January 24, 2013, and on January 24, 2014. Plaintiff claims that ATC made the first two payments, and accepted plaintiff's performance. Plaintiff alleges that by January 24, 2011, it had completed all its obligations to AFC, with the exception of providing any future maintenance and software upgrades, if needed. However, plaintiff asserts, ATC failed to make the payment due on January 24, 2012, and has made no payments since.

Plaintiff filed the original complaint on June 19, 2012, and filed the first amended complaint ("FAC") on August 14, 2012. In the FAC, plaintiff alleges five causes of action – breach of written contract; unjust enrichment; anticipatory breach; common count (goods and services rendered); and declaratory relief. ATC now seeks an order dismissing the complaint for lack of personal jurisdiction.

**DISCUSSION**

A.   Legal Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is appropriate. See Pebble Beach Company v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006); Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in plaintiff's favor. Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Doe v. Unocal Corporation, 248 F.3d 915, 922 (9th Cir. 2001). When the court makes the jurisdictional finding based on pleadings and affidavits, rather than holding an evidentiary hearing, the plaintiff need only establish a prima facie case of jurisdiction." Rano v. Sipa Press, Inc., 987 F.2d 580, 587 n.3 (9th Cir. 1993).

While the court reviews motions to dismiss for lack of personal jurisdiction in the light

most favorable to the non-moving party, "when there is a conflict between the complaint and an affidavit, plaintiff cannot rely solely on the complaint to establish jurisdictional facts." North American Lubricants Co. v. Terry, 2012 WL 1108918, at *4 (E.D. Cal. Apr. 2, 2012) (citing Data Disc, Inc., 557 F.2d at 1284).  If the court considers only written materials, plaintiff must show facts, which if true, would establish personal jurisdiction over defendants.  Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 862 (9th Cir. 2003); Data Disc, 557 F.2d at 1285.

B.    Defendant's Motion

ATC argues that the complaint should be dismissed for lack of personal jurisdiction. ATC is located in Nebraska, and asserts that its sole contact with California is the contract between itself and plaintiff and the related purchase and work orders.  ATC contends that this contract does not provide a sufficient basis for establishing personal jurisdiction over it in California.

Questions of personal jurisdiction ultimately turn on concepts of due process, which requires that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment, 326 U.S. 310, 315 (1945) (quotations omitted).  When no federal statute authorizes personal jurisdiction, this court must apply California law.  As California's long arm statute is coextensive with federal due process requirements, the jurisdictional analysis is the same.  Mavrix Photo, 647 F.3d at 1223; Cal. Civ. Proc. Code § 410.10.

Under this analysis, a state may exercise either "general" or "specific" jurisdiction over a defendant.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  Plaintiff does not assert that defendants' contacts with California are so systematic and continuous such that defendants are subject to suit in California under the doctrine of general jurisdiction.

The "constitutional touchstone" of specific jurisdiction is "whether the defendant

3

purposefully established 'minimum contacts' in forum State," and the plaintiff's claim arose out of those contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The Ninth Circuit has devised a three-part test for analyzing claims of specific jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice; i.e. it must be reasonable. Mavrix Photo, 647 F.3d at 1227-28 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).

The plaintiff bears the burden of satisfying the first two prongs of this three-part test. Schwarzenegger, 374 F.3d at 802. If the plaintiff fails to satisfy either of the first two prongs, jurisdiction in the forum would deprive the defendant of due process, and the court need not proceed with any analysis of the reasonableness factors (the third prong). See Pebble Beach, 453 F.3d at 1155.

With regard to the first prong, the "purposeful availment" analysis is generally used for cases sounding in contract while the "purposeful direction" analysis applies to cases sounding in tort. Id. Here, because all causes of action alleged in the FAC sound in contract, the appropriate analysis is the "purposeful availment" inquiry.

Purposeful availment generally consists of taking an action in the forum, which invokes the benefits and protections of the laws of the forum, such as executing and performing a contract in the forum. Schwarzenegger, 374 F.3d at 802. By taking such actions, a defendant is considered to have "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Id. (citation omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King, 471 U.S. at 475 (citations

4

and quotation marks omitted).

However, the mere existence of a contract between a defendant and a forum resident does not automatically establish sufficient minimum contacts with the forum. See id. at 478. To determine whether a contract can establish the minimum contacts necessary for personal jurisdiction, the court must consider "prior negotiations and contemplated future consequences, along with the parties' actual course of dealing." Id. at 479.

ATC contends that there were no precontract discussions in California; that the agreement and related purchase orders were negotiated over the phone and by email, while ATC and all its agents were in Nebraska; and that the contract itself and all purchase orders were executed by ATC in Nebraska. In addition, ATC notes that there is no forum selection clause in the contract and that no agent of ATC ever traveled to California to execute or perform any part of the contract, and that it is undisputed that all training regarding the use of the software occurred in Nebraska.

ATC acknowledges that the agreement provides that the law of California shall govern the contract. However, ATC asserts that it did not specifically negotiate that term, and argues that the more significant facts are that all purchase orders and work orders were issued from Nebraska, and that ATC utilized the products purchased from plaintiff only in Nebraska.

ATC also contends that the exercise of jurisdiction would not be reasonable. The factors that are relevant to the "reasonableness" evaluation are (1) the extent of defendant's purposeful interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution to the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Core-Vent Corp. v. Nobel Indus., AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993). No one factor is dispositive and the court must balance all of the factors. Id. at 1488. The more attenuated the contacts with the forum state, the less the defendant must show in terms of unreasonableness to defeat the court's

exercise of jurisdiction. Id. at 1488.

ATC asserts that the burden imposed on it were it compelled to defend this suit in California would be significant, as its principal place of business is in Nebraska, and it has no office or employees in California, has never been a party to a lawsuit in California, and has no connection at all with California. ATC contends that being forced to litigate here would impose a substantial financial hardship, as it is a relatively small company with only 70 employees. Moreover, the key employees who would likely be called as witnesses are also essential to the operations in Nebraska, and their absence could cause harm to ATC's ability to meet the needs of its customers (banks, law firms, insurance agencies, hospitals, doctors's offices, police stations, and fire stations).

Second, ATC argues that the State of California has no significant interest in having this dispute resolved in this forum, as ATC does not conduct business in California, has no employees here, and has never appeared in court here.

Third, ATC asserts that plaintiff's ability to seek relief would not be diminished by litigating this dispute in a court in Nebraska, where personal jurisdiction over ATC would comport with due process. In particular, ATC notes, plaintiff's agents already travel to Nebraska as part of plaintiff's business, and thus, the burden on plaintiff to litigate in Nebraska would be significantly less than the burden on ATC to litigate in California.

Fourth, ATC argues that the interstate judicial system has no particular interest in having this case heard here, as there is no piecemeal litigation that would result from this court's declining to exercise jurisdiction.

Fifth, ATC contends that there are no particular social policy interests of the several states that would be implicated were the court to decline to exercise jurisdiction, as this is a simple breach of contract case.

ATC supports its motion with a declaration from its president, Bradley A. Moline, stating that it is a Nebraska limited liability company, with its principal place of business in Nebraska. Mr. Moline asserts that ATC has no office location in California, and none of its 70 employees are located in this state. It is not licensed or registered to do business in

6

California, and in fact does no business here. It has never been a party to any civil action in any venue in California, and has never made an appearance in any court in California.

Mr. Moline contends that the entire course of dealing and the substance of the relationship between ATC and plaintiff was in Nebraska, which includes the installation and maintenance of plaintiff's software by plaintiff's agents in Nebraska. In particular, Mr. Moline notes that plaintiff's employees or agents traveled to Nebraska numerous times to install and maintain the software and to provide training on the software, and that no agent or employee of ATC ever performed any act relating to the contract or the purchase orders within the state of California.

Mr. Moline contends that ATC never anticipated that it might be required to appear in a court in California, and that it would cause the company a great hardship were it obligated to do so.

In opposition, plaintiff argues that exercise of jurisdiction over ATC in California is reasonable because ATC has purposefully availed itself of the privilege of conducting activities here, because plaintiff's claim arises out of ATC's California-related activities, and because the exercise of jurisdiction would be reasonable.

First, plaintiff asserts that purposeful availment is shown by the fact that ATC sent communications into California (mail, phone calls, email) during the course of the contract negotiations; the fact that instead of paying for the entire contract up front, it created an "ongoing relationship" by negotiating payment over four years, which involved sending payments to a California bank; the fact that ATC agreed that any future disputes would be resolved pursuant to California law; and the fact that the services for which ATC agreed to pay were provided in California, as the computer software was designed in California and sent remotely to ATC's Nebraska computers.

Plaintiff argues that this case is closely analogous to Burger King, where the court found personal jurisdiction because the defendant had deliberately chosen to enter into a multi-year contract with a foreign corporation whose forum's law was controlling, and caused foreseeable injury when the defendant breached its contract. Here, plaintiff

asserts, ATC deliberately chose to enter into a multi-year relationship with a California company, whose contract is construed using California law, and has caused foreseeable injury by failing to make payments while continuing to use the very products provided by the plaintiff.

Second, plaintiff contends that this case arises out of ATC's California-related activities, because the basis for plaintiff's claim is ATC's breach of the parties' contract, and the forum-related activity that plaintiff describes is related to that contract.

Third, plaintiff asserts that the exercise of jurisdiction would be reasonable. With regard to burden, plaintiff contends that ATC has not provided any evidence showing how it would be more burdened by having to litigate here than by having to litigate in Nebraska. Plaintiff speculates that since ATC has claimed to be knowledgeable with regard to "state-of-the-art fiber optic telecommunications, data, and video networks," it would surely be no hardship for ATC to maintain communications with its employees while they were traveling for this litigation.

With regard to California's interest, plaintiff asserts that because it is a California company, the state has an interest in providing a convenient forum in which it can resolve its differences with out-of-state residents.

With regard to its own interest in receiving convenient and effective relief, plaintiff argues that it no longer employs any of the individuals who provided the installation and other services to ATC, and that if the case were heard in Nebraska, it would be highly inconvenienced by the difficulty of compelling non-party witnesses into Nebraska for litigation. By contrast, plaintiff claims that ATC's "only witness" to the breach is Mr. Moline, and argues that ATC would not have any problem getting Mr. Moline to California.

With regard to the interests of the interstate judicial system and the shared interests of the several states, plaintiff argues that ATC's arguments are mere "conclusions" and do not make out the compelling case required to defeat personal jurisdiction.

The court finds that plaintiff has not met its burden of showing that exercise of jurisdiction over ATC in California would comport with due process, as there is no evidence

that ATC did anything to purposefully avail itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws.  Accordingly, the motion is GRANTED.

There is no dispute that plaintiff – a California resident – performed most of the work on the contract (software design and development, and remote installation) while in California.  However, the work it did do in Nebraska was significant, as it included training of ATC's employees and configuring of ATC's computer so the software could be remotely installed from California.  In other words, ATC had no physical presence at any time in California, and any work that required ATC's physical presence was done in Nebraska.

The negotiation of the contract was accomplished via phone, email, and regular mail – but it was done by ATC while in Nebraska and plaintiff while in California.  Ordinarily, the mere use of the mails, telephone, or other international communications do not qualify as purposeful activity invoking the benefits and protections of the forum state.  Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir. 1991).  And while the software was designed by plaintiff in California, and remotely installed by plaintiff's agents or employees onto ATC's Nebraska computers, there is no evidence that anyone from ATC ever came to California.

Moreover, plaintiff's arguments primarily show its own contacts with California, not ATC's.  For example, plaintiff asserts that ATC sent emails and other correspondence to plaintiff in California, that ATC made payments to plaintiff via a bank in California, and that plaintiff performed the contract in California as evidence supporting personal jurisdiction over ATC in California.  However, none of this shows ATC's contacts with California, or shows that ATC purposefully availed itself of the privilege of conducting business in California.

Finally, as for the choice-of-law provision in the contract, without more, such a provision does not establish sufficient meaningful contacts with the forum state such that the court can find support for the exercise of personal jurisdiction over an out-of-state defendant.  See Burger King, 471 U.S. at 482; Shaffer v. Heitner, 433 U.S. 186, 215-16 (1977).

**CONCLUSION**

In accordance with the foregoing, ATC's motion to dismiss is GRANTED, without prejudice to refiling the case in Nebraska.

**IT IS SO ORDERED.**

Dated: January 18, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge